UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| TIFFANY YVETTE NELSON,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 14-81-PLA<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on January 24, 2014, seeking review of the Commissioner's denial of her applications for a period of disability and Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on February 28, 2014, and March 1, 2014. Pursuant to the Court's Order, the parties filed a Joint Stipulation on September 12, 2014, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on January 11, 1969. [Administrative Record ("AR") at 206.] Plaintiff has a bachelor's degree in psychology as well as a master addiction certification. [AR at 45.] She has past relevant work experience as a waitress, care giver, phlebotomist, and counselor. [AR at 245.]

On May 5, 2010, plaintiff filed an application for a period of disability and Disability Insurance Benefits, and on May 11, 2010, she filed an application for Supplemental Security Income payments. [AR at 21, 204-14.] In both applications plaintiff alleged disability beginning on October 1, 2009. [Id.] After the applications were denied initially and on reconsideration, plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 89-101, 104-08, 110.] A hearing was held on April 26, 2012, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 38-88.] A vocational expert ("VE") also testified. [AR at 82-88.] On June 29, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from October 1, 2009, through the date of the decision. [AR at 21-32.] When plaintiff's request for review of the hearing decision [AR at 11] was denied by the Appeals Council on November 15, 2013 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in

substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., pt. 404, subpt. P, app. 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date, October 1, 2009.[1] [AR at 23.] At step two, the ALJ concluded that plaintiff has the following severe impairments: disc disease of the cervical and lumbar spine; seizure disorder; migraine headaches; and anxiety disorder. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that

---

[1] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through June 30, 2011. [AR at 23.]

4

meets or medically equals any of the impairments in the Listings.[2] [AR at 24.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[4] as follows: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday with regular breaks; occasionally climb, balance, stoop, kneel, crouch and crawl; avoid concentrated exposure to hazards; and limited to work involving simple repetitive tasks. [AR at 25.] At step four, the ALJ concluded that plaintiff is unable to perform any of her past relevant work. [AR at 30.] At step five, with the assistance of the VE, the ALJ determined that there were jobs that exist in significant numbers in the national economy that plaintiff could perform, including: electronics worker (Dictionary of Occupational Titles ("DOT") 726.687-010), sewing machine operator (DOT 787.685-010), and packing machine operator (DOT 920.685-082). [AR at 30-31.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from October 1, 2009, through the date of the decision. [AR at 31.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred by: (1) failing to provide legally sufficient reasons to discount her credibility, and (2) failing to resolve conflicts in the step five determination. [Joint

---

[2] See 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[4] 20 C.F.R. §§ 404.1567(b) and 416.967(b) define "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."

Stipulation ("JS") at 4-10, 14-17.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.    Plaintiff's Credibility**

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting her subjective symptom testimony. [JS at 4-10.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).

Where, as here, the ALJ does not find "affirmative evidence" of malingering, the ALJ's reasons for rejecting a claimant's credibility must be clear and convincing. See Benton, 331 F.3d at 1040 (where there is no evidence of malingering, the ALJ can reject claimant's testimony only by "expressing clear and convincing reasons for doing so."). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (internal quotation marks and citation omitted); Berry, 622 F.3d at 1234 (same). The ALJ's findings "must

be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Bunnell, 947 F.2d at 345-46 (internal quotation marks and citation omitted). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Id. at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Plaintiff testified at the April 26, 2012, hearing that she has suffered from back pain since childhood and was told in the tenth grade during a school physical exam that she had a "21 percent curve in [her] spine." [AR at 54-55.] She was "supposed to get [a] metal brace, [but her] mom never did it because [they] were on welfare." [AR at 55.] Plaintiff testified that after years of struggling with neck and back pain, she now must inject herself five times per month with the pain medication, Toradol, in addition to having had epidural facet blocks, cortisone injections, and pain management therapy. [AR at 55, 57, 81.] Plaintiff also testified that in June of 2010, she had breast reduction surgery to alleviate her neck and back pain. [AR at 56, 58, 78.] Plaintiff further testified that she suffers from: migraine headaches, accompanied with loss of bladder function and nausea "sometimes three times a month or more" that lead her to the emergency room [AR at 59-60]; tailbone pain that affects both of her hips [AR at 64]; heel and ankle pain [AR at 64-65]; bone spurs in both feet [AR at 65]; high blood pressure [AR at 60, 62]; seizures [AR at 61, 76]; panic and anxiety attacks that force her awake at night [AR at 63, 65]; and tachycardia. [AR at 63.] Plaintiff stated that the week before the hearing she had been in the hospital for "severe inflammation of [her] joints" and high blood pressure, and that her pain is "just a regular cycle." [AR at 57-58, 60.]

Plaintiff indicated that she: cannot sit for more than 20 to 30 minutes or stand for longer than 15 to 20 minutes [AR at 64-65]; cannot be exposed to loud noises [AR at 65]; does not do any household chores [AR at 68]; can only make TV dinners or something "real quick" for food [AR at 69]; can only lift a small bag of potatoes [AR at 64]; needs to rest for four to five hours per day [AR at 79-80]; at times requires the assistance of a cane to ambulate [AR at 80]; and at times

7

requires assistance to get into the bathtub, and to walk down the stairs of a two-story house. [AR at 81.] Moreover, she indicated that based on doctor's advice, she does not drive. [AR at 75-76.] Furthermore, plaintiff testified that she has to take the following prescription medications: Norco, Soma, Xanax, Dilantin, Topamax, and Trazodone. [AR at 55-57.] Because of side-effects from these medications, she is "not . . . able to sleep sometimes, throw[s] up, not . . . able to eat, [and has] agitation." [AR at 58.]

The ALJ concluded that plaintiff had presented medically determinable impairments that could reasonably be expected to cause some of the alleged symptoms, but that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent those statements are inconsistent with the [ALJ's RFC determination]." [AR at 26.] The ALJ specifically discounted plaintiff's credibility because: (1) the objective medical evidence does not support the extent of plaintiff's symptoms, and (2) plaintiff's treatment has been routine and conservative since the alleged onset date. [AR at 27, 30.]

Having carefully reviewed the record, the Court concludes that the ALJ's credibility determination is not supported by substantial evidence.

### 1.     Routine and Conservative Treatment

The ALJ stated that plaintiff's treatment has been essentially routine and conservative in nature. [AR at 27.] According to the ALJ, the "lack of more aggressive treatment" suggests that plaintiff's symptoms and limitations are not as severe as plaintiff alleges. [Id.]

An ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, in this case there is evidence that plaintiff's treatment has been anything but routine and conservative, in that it includes emergency care [see, e.g., AR at 434-39], multiple MRIs [see, e.g., AR at 306, 311-17, 732, 735-38], pain management therapy [AR at 721-31], multiple epidural steroid injections in plaintiff's lumbar and cervical spine that required plaintiff first be placed on "monitored anesthesia care supervised by a surgeon" [AR at 344-55; see also AR at 724]; bilateral sacroiliac joint injections that required plaintiff first be sedated [AR at 721-23]; five injections of the pain

medication Toradol every month [see, e.g., AR at 435]; and, as the ALJ noted, even breast reduction surgery. [See, e.g., AR at 27, 55, 599, 630.] An "absence of surgery or injections" may be considered "conservative" treatment. See Childress v. Colvin, 2014 WL 4629593, at *12-13 (N.D. Cal. Sept. 16, 2014) (remanding where ALJ failed to adequately explain conclusion of routine and conservative treatment); see also Johnson, 60 F.3d at 1434 (affirming where plaintiff had not sought any treatment); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (affirming where plaintiff had not sought treatment for two years before the hearing). Here, the ALJ failed to explain how treatment that includes spinal injections administered while plaintiff is sedated and after she has provided "informed consent," pain management therapy, and even surgery, are nevertheless simply "routine and conservative." [See, e.g., AR at 344-55, 652-53, 659-60, 664, 668; cf. AR at 27.] Thus, in light of the ALJ's failure to identify how plaintiff's treatment is routine and conservative, or how her treatment contradicts her testimony, this factor does not support the ALJ's credibility determination. See Childress, 2014 WL 4629593, at *13.

Based on the foregoing, the Court cannot conclude that this was a clear and convincing reason to discount plaintiff's credibility.

### 2. Objective Evidence of Record

After noting that plaintiff's treatment has been routine and conservative in nature, and that the lack of more aggressive treatment indicates plaintiff's symptoms and limitations are not as severe as she alleges, the ALJ noted that plaintiff's credibility is also "diminished" because her allegations regarding the severity of her symptoms and limitations are greater than expected in light of the objective evidence of record. [AR at 27, see also AR at 26-30.] While a lack of objective medical evidence supporting a plaintiff's subjective complaints is one factor that an ALJ can consider in evaluating symptom testimony, it cannot provide the only basis to reject a claimant's credibility. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

9

Here, the ALJ noted that "[t]he positive objective clinical diagnostic findings . . . do not support more restrictive functional limitations than those assessed herein. There is no medical source statement . . . that endorses the extent of [plaintiff]'s alleged functional limitation <u>or</u> that suggests functional limitations more restrictive than [the ALJ's RFC determination]." [AR at 27 (emphasis added).] This conclusion mischaracterizes the record. For example, on November 9, 2011, plaintiff's doctor, Arul Doralswamy, M.D., increased plaintiff's pain medication because of increased muscle spasms. [AR at 664.] On December 21, 2011, Dr. Doralswamy reported that plaintiff "suffer[s] from severe neck and R>L upper extremity pain." [AR at 663.] On January 5, 2012, Dr. Doralswamy diagnosed plaintiff with "severe lower back, tailbone, and bilateral LE radiating pain." [AR at 659.] Furthermore, on October 3, 2012, Dr. Doralswamy opined that:

> Due to the pain in [plaintiff]'s neck, back, and hips. She is unable to sit or stand for longer than 20 minutes at a time. . . . [Plaintiff] is unable to change positions frequently. [Plaintiff] is unable to drive now and has to depend on others to get around. [Plaintiff] states that most of her days are spent in bed with pain from her tailbone area to the upper neck area. [Plaintiff] manages her pain through medication, which is 50% effective. [Plaintiff] complains of sleepiness, nausea, depression, and vomiting after taking pain medications.

[AR at 714.] Dr. Doralswamy also completed a RFC Questionnaire wherein he diagnosed plaintiff with "severe chronic pain syndrome due to a combination of lumbar and cervical [degenerative disc disease] and facet arthropathy." [AR at 716.] He opined that plaintiff has a "[l]ong history of chronic pain that has been impeding [her] life." [Id.] Dr. Doralswamy also assessed plaintiff's function-by-function limitation in that report and noted that plaintiff: cannot walk for more than one-half block; cannot sit for more than 15-20 minutes; cannot stand for longer than 20 minutes; requires a 15-20 minute break every 20-30 minutes; requires the use of a cane for standing/walking; can never lift more than 10 lbs.; can occasionally twist and stoop; cannot crouch, squat, climb ladders or stairs; and has only 30% grip strength in both of her hands. [<u>See</u> AR at 715-20.]

Although the ALJ stated that he had "considered all of the medical evidence," he failed to mention, much less address, any of Dr. Doralswamy's treatment records. [<u>See</u> AR at 27; <u>cf.</u> AR at 21-32.] An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. <u>See</u>, <u>e.g.</u>, <u>Holohan v. Massanari</u>, 246

F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)); see also Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (It is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports."); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted).

Accordingly, as the ALJ's conclusion that the objective medical evidence did not support the severity of plaintiff's symptoms was not based on a complete review of the record, substantial evidence does not support the ALJ's credibility determination.[5] Thus, remand is warranted.[6]

## VI.
## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, it is appropriate to exercise this discretion to direct an immediate

---

[5] In any event, the absence of supporting objective medical evidence alone is insufficient to discount plaintiff's credibility and, as explained above, the ALJ failed to provide any other clear and convincing reason to discount plaintiff's credibility.

[6] As the ALJ's consideration on remand of Dr. Doralswamy's opinions may impact on the RFC determination, the Court exercises its discretion not to address that issue in this Order. [See JS at 14-17.]

award of benefits. Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth the three-part credit-as-true standard for exercising the Court's discretion to remand with instructions to calculate and award benefits); see also Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96; see also Connett v. Barnhart, 340 F.3d 871 (9th Cir. 2003) (cautioning that the credit-as-true rule may not be dispositive of the remand question in all cases, even where all three conditions are met). In Garrison, the Ninth Circuit, noting that it had never exercised the flexibility set forth in Connett in a published decision, clarified that the nature of the flexibility described in Connett is "properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Garrison, 759 F.3d at 1020-21.

      In this case, as discussed above, although the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's subjective symptom testimony, it is not clear that if the improperly discredited evidence were credited as true the ALJ would be required to find the claimant disabled on remand. Thus, the Court finds that there are outstanding issues that must be resolved before a final determination can be made.

      In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide clear and convincing reasons for discounting plaintiff's subjective symptom allegations, the ALJ on remand shall reassess plaintiff's credibility. Next, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[7]

---

[7] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to
(continued...)

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 15, 2014

                                              PAUL L. ABRAMS
                                 UNITED STATES MAGISTRATE JUDGE

---

[7](...continued)
return to her past relevant work.